**McConnico, Emily**

FILED
CLERK, U.S. DISTRICT COURT
12/2/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ___IV___ DEPUTY

**5:24-cv-00404-SSS-DTBx**

| | |
|---|---|
| **From:** | McConnico, Emily |
| **Sent:** | Monday, November 25, 2024 1:41 PM |
| **To:** | 'taras@kicklawfirm.com'; 'chilton@burnscharest.com'; 'dcharest@burnscharest.com'; 'dnicholson@burnscharest.com'; 'tyler@kicklawfirm.com'; 'cjames@velaw.com'; 'bfalcon@velaw.com'; 'ewernick@velaw.com'; 'atwinn@duanemorris.com'; 'clbaird@duanemorris.com'; 'ddoft@duanemorris.com'; 'mdong@kaufmandolowich.com'; 'tdevlin@kaufmandolowich.com'; 'kalphonso@kaufmandolowich.com'; 'jlopez@sidley.com'; 'sarmbrust@sidley.com'; 'hsheppard@sidley.com'; 'jdosch@sidley.com' |
| **Subject:** | Re: November 14th Letter and Strategy Memo |
| **Attachments:** | 111424 State of AZ's Interest Letter AGO.pdf; 2024-09-26 Letter [dckt 181_0].pdf |

Judge Sykes,

Our office's November 14, 2024 letter to you inadvertently did not attach an August 2023 Strategy Memo that is cited in our letter to you. Attached is that Strategy Memo. We apologize for the oversight.

Sincerely,

**Emily McConnico**
**Executive Assistant to**
**Kris Mayes, Arizona Attorney General**



Arizona Attorney General Kris Mayes
2005 N. Central Avenue
Phoenix, AZ 85004
Desk: 602-542-7922
Emily.McConnico@azag.gov
http://www.azag.gov



**KRIS MAYES**
ATTORNEY GENERAL

OFFICE OF THE ATTORNEY GENERAL
STATE OF ARIZONA

November 14, 2024

Honorable Sunshine Suzanne Sykes
United States District Court, Central District of California
(Eastern Division-Riverside)
George E. Brown, Jr. Federal Building &
United States Courthouse
3470 Twelfth Street
Riverside, CA 92501-4450

   Re: **State of Arizona's Interest in 5:24-cv-00404-SSS-DTB,** *Guzman, et al v. Western Union Financial Services, Inc., et al.*

Dear Honorable Judge Sykes,

  I am aware of the litigation currently pending in the matter of 5:24-cv-00404-SSS-DTB, *Guzman, et al v. Western Union Financial Services, Inc., et al*. Representatives from my office are closely monitoring its progress. As this Court is aware, the Arizona Attorney General enjoys sovereign immunity under the Eleventh Amendment, see *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). No waiver of that immunity is intended by this correspondence. However, it is important to inform your Honor that the State of Arizona and I, in my official capacity as the Arizona Attorney General, are highly vested in the outcome of this matter.

  Since assuming office in January of last year, I have been steadfast in my commitment to tackling the evils committed by Transnational Criminal Organizations (TCOs) operating in the Southwest Border area and adversely affecting Arizonans. As I have publicly declared[1], the TCOs have escalated their brazenness over the past few years, including in the mass importation of fentanyl to and through Arizona, tragically resulting in the loss of hundreds of thousands of lives in the United States. The harm caused by TCOs extends well beyond simply the fentanyl crisis. They continue to control many aspects of illegal immigration, intimidating and victimizing individuals seeking escape from extreme poverty, political corruption, and instability in their own countries. TCOs are responsible for weapons trafficking in Mexico and other Latin American countries, empowering the criminal element and obstructing any progress toward governmental stability. TCOs also fund and encourage the mass commission of fraud against Arizonans, including our most vulnerable elderly residents. I will not sit idly by while these criminal organizations wreak havoc on the citizens of Arizona. As promised during my campaign, I am aggressively employing every tool afforded to me by Arizona law to enforce the rule of law and stop the efforts of these TCOs.

---

[1] Press Conference: Attorney General Mayes and US Treasury Announce Financial Sanctions Against Cartel, March 25, 2024, https://www.youtube.com/watch?v=oPQfD78-taM.

Towards my commitment to confront the TCOs, I have embraced and furthered a program first implemented by a preceding Arizona Attorney General targeting these organizations' laundering of illicit proceeds through Money Service Businesses (MSBs), which are at a much higher risk of being targeted and exploited by TCOs. (*See* Attached August 2023 Strategy Memo). Our success in combatting these sophisticated TCOs is highly dependent on my ability to issue and enforce the subpoenas and obtain the requested transactional records that are at the crux of the present matter before your Honor.

Because a primary issue before this Court is the legality of the Defendant MSBs' compliance with these subpoenas, I believe it is important to notify this Court of the State of Arizona's interest in this matter. In fact, it is difficult to identify a party more interested in such litigation than the State of Arizona. Should the question arise, as it did in similar ligation pending in the Northern District of California in 4:22-cv-07996-HSG, *Sequeira, et al v. Homeland Security Investigations* (HSI), *et al*, by this correspondence, I wish to inform the Court that the State of Arizona has a very strong interest in the matter currently before this Court in 5:24-cv-00404-SSS-DTB, *Guzman, et al v. Western Union Financial Services, Inc., et al* .

Sincerely,

Kris Mayes
Arizona Attorney General

cc:  All named parties through their noticed representatives (see email list attached).

Taras P Kick
The Kick Law Firm APC,
Email: taras@kicklawfirm.com

Chase Hilton
Burns Charest LLP
Email: chilton@burnscharest.com

Daniel H Charest
Burns Charest LLP
Email: dcharest@burnscharest.com

Darren Nicholson
Burns Charest LLP
Email: dnicholson@burnscharest.com

Tyler J. Dosaj
Email: tyler@kicklawfirm.com

Christopher Walter James
Vinson and Elkins LLP
Email: cjames@velaw.com

Briana R Falcon
Vinson and Elkins LLP
Email: bfalcon@velaw.com

Ephraim Wernick
Vinson and Elkins LLP
Email: ewernick@velaw.com

Aaron Thomas Winn
Duane Morris LLP
Email: atwinn@duanemorris.com

Courtney L Baird
Duane Morris LLP
Email: clbaird@duanemorris.com

Daniel Max Doft
Duane Morris LLP
Email: ddoft@duanemorris.com

Marcus M Dong
Kaufman Dolowich LLP
Email: mdong@kaufmandolowich.com

Tad A Devlin
Kaufman Dolowich LLP

Email: tdevlin@kaufmandolowich.com

Katherine Alphonso
Kaufman Dolowich LLP
Email: kalphonso@kaufmandolowich.com

Jodi E Lopez
Sidley Austin LLP
Email: jlopez@sidley.com

Sheila A G Armbrust
Sidley Austin LLP
Email: sarmbrust@sidley.com

Hille R Sheppard
Sidley Austin LLP
Email: hsheppard@sidley.com

Joseph R. Dosch
Sidley Austin LLP
Email: jdosch@sidley.com



KRIS MAYES
Attorney General

Office of the Attorney General
State of Arizona

September 25, 2024

Honorable Haywood S. Gilliam, Jr.
United States District Court, California Northern District
Ronald V. Dellums Federal Building
& United States Courthouse
1301 Clay Street
Oakland, CA 94612

   Re: State of Arizona's Interest in 4:22-cv-07996-HSG, *Sequeira, et al v. Homeland Security Investigations (HSI)*, et al.

Dear Honorable Judge Gilliam,

I am aware of the litigation currently pending in the matter of 4:22-cv-07996-HSG, *Sequeira, et al v. Homeland Security Investigations (HSI), et al*. Representatives from my office are closely monitoring its progress and have observed hearings held in the matter both physically and virtually. As this Court is aware, the Arizona Attorney General enjoys sovereign immunity under the Eleventh Amendment, see *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). No waiver of that immunity is intended by this correspondence. However, it is important to inform your Honor that the State of Arizona and I, in my official capacity as the Arizona Attorney General, are highly vested in the outcome of this matter.

Since assuming office in January of last year, I have remained steadfast in my commitment to tackling the evils committed by Transnational Criminal Organizations (TCOs) operating in the Southwest Border area and adversely affecting Arizonans. As I have publicly declared[1], the TCOs have escalated their brazenness over the past few years, including in the mass importation of fentanyl to and through Arizona, tragically resulting in the loss of hundreds of thousands of lives in the United States. The harm caused by TCOs extends well beyond simply the fentanyl crisis. They continue to control many aspects of illegal immigration, intimidating and victimizing individuals seeking escape from extreme poverty, political corruption, and instability in their own countries. TCOs are responsible for weapons trafficking in Mexico and other Latin American countries, empowering the criminal element and obstructing any progress toward governmental stability. TCOs also fund and encourage the mass commission of fraud against Arizonans, including our most vulnerable elderly residents. I will not sit idly by while these criminal

---

[1] Press Conference: Attorney General Mayes and US Treasury Announce Financial Sanctions Against Cartel, March 25, 2024, https://www.youtube.com/watch?v=oPQfD78-taM.

organizations wreak havoc on the citizens of Arizona. As promised during my campaign, I am aggressively employing every tool afforded to me by Arizona law to enforce the rule of law and stop the efforts of these TCOs.

Towards my commitment to confront the TCOs, I have embraced and furthered a program first implemented by a preceding Arizona Attorney General targeting these organizations' laundering of illicit proceeds through Money Service Businesses (MSBs), which are at a much higher risk of being targeted and exploited by TCOs. (*See* Attached August 2023 Strategy Memo). My success in combatting these sophisticated TCOs is highly dependent on my ability to issue and enforce the subpoenas and obtain the requested transactional records which are at the crux of the present matter before your Honor. Because a primary issue before this Court is the legality of the Defendant MSBs' compliance with these subpoenas, it is difficult to identify a party more interested in such litigation than the State of Arizona. By this correspondence, I wish to inform the Court that the State of Arizona has a very strong interest in the matter currently before it in 4:22-cv-07996-HSG, *Sequeira, et al v. Homeland Security Investigations* (HSI), et al.

                                          Sincerely,

                                          Kris Mayes
                                          Arizona Attorney General

cc: All named parties through their noticed representatives (see email list attached)



# STRATEGY MEMO

*Arizona Attorney General's Strategy to Combat Transnational Criminal Organizations by Targeting the Laundering of Illicit Proceeds Through Money Service Businesses and Enhancing Information Sharing with Federal, State, and Local Law Enforcement Agencies*

AUGUST 2023

ARIZONA ATTORNEY GENERAL KRIS MAYES

# *Strategy to Combat Transnational Criminal Organizations:*

## Introduction

In Arizona, more than five people die every day from opioid overdose, with fentanyl ranking as the most commonly reported drug in overdose cases. In 2022, over 100,000 people in the U.S. died of drug overdoses and drug poisonings, with almost 67% of those deaths involving fentanyl. **More than half of all the fentanyl seized in the entire United States is seized in Arizona.**[1] Transnational Criminal Organizations (TCOs), specifically Mexico-based TCOs, are the most significant drug trafficking threat to the United States. TCOs control most of the U.S. drug market. They have established varied transportation routes and have advanced communications capabilities. They hold strong affiliations with criminal groups and gangs in the United States. TCOs supply most of the heroin, fentanyl, methamphetamine, cocaine, and foreign-produced marijuana available in U.S. illicit drug markets.[2]

The harm caused by TCOs extends well beyond the fentanyl crisis.[3] TCOs continue to control many aspects of illegal immigration, intimidating and victimizing individuals seeking escape from extreme poverty, political corruption, and instability in their countries.[4] TCOs are responsible for weapons trafficking in Mexico and other Latin American countries, empowering the criminal element and obstructing any progress toward governmental stability.[5] TCOs also fund and encourage the mass commission of fraud against Arizonans, including our most vulnerable elderly residents.[6]



---

1 Kyrsten Sinema, US Senator for Arizona, *"Sinema Hosts Tele-Town Hall on Solutions to Arizona's Fentanyl Crisis."* (21 July 2023). https://www.sinema.senate.gov/sinema-hosts-tele-town-hall-solutions-arizonas-fentanyl-crisis.
2 Drug Enforcement Administration, *2020 National Drug Threat Assessment*. Washington, DC: U.S. Department of Justice; 2021. Report No. DEA-DCT-DIR-008-21. https://www.dea.gov/sites/default/files/2021-02/DIR-008-21%202020%20National%20Drug%20Threat%20Assessment_WEB.pdf.
3 Congressional Research Service, *"Mexico: Organized Crime and Drug Trafficking Organizations."* (2022, June 7). Https://sgp.fas.org/crs/row/R41576.pdf.
4 I.e., U.S. Department of the Treasury. *"Treasury Sanctions Mexico-based Transnational Human Smuggling Organization."* (2023, June 16). Press Release. Retrieved from https://home.treasury.gov/news/press-releases/jy1545.
5 Ingram, Paul, *"2nd Member of Gun-Smuggling Due Sentenced to 12 Years in Prison."* Tucson Sentinel. (2 May 2022). https://www.tucsonsentinel.com/local/report/050222_gun_smuggler_sentenced/2nd-member-gun-smuggling-duo-sentenced-12-years-prison/.
6 Keller, Alex, *"21 Charged for Roles in Transnational Fraud Schemes That Target the Elderly."* CBS Texas. (30 November 2022). https://www.cbsnews.com/texas/news/21-charged-for-roles-in-transnational-fraud-schemes-that-target-the-elderly/.



# Strategic Objective

To reduce TCO-committed crime, the Arizona Attorney General's Office (AGO) is targeting TCOs' ability to conduct transactions involving illicitly derived proceeds. This objective prioritizes tracking the flow of unlawful proceeds through Money Services Businesses (MSBs) and using advanced data analytics and expert scrutiny to gain actionable insights and fortifying and enriching partnerships with other Law Enforcement (LE) entities. Through these combined efforts, the AGO aims to disrupt the financial pathways of criminal activities more effectively and achieve meaningful outcomes.

The AGO recognizes that TCOs exploit vulnerabilities through our financial institutions, specifically the MSB industry, including brick-and-mortar and cryptocurrency-based MSBs. This strategy entails obtaining targeted transactional data from MSBs to investigate and identify individuals and companies operating inside and outside Arizona who facilitate the importation and distribution of illegal drugs brought through Arizona's southern border and the laundering and removal of illicit proceeds to locations outside of the United States.

To achieve maximal disruption of criminal activities led by TCOs and resulting financial gain, the AGO will use a multi-pronged approach encompassing advanced data analysis, collaboration with other federal, state, and local law enforcement (LE) agencies, data and intelligence sharing, and educational initiatives. Implementation of the AGO's strategy will be enabled through the AGO's engagement with the Transaction Record Analysis Center (TRAC). Collaboration with other LE partners is crucial to enabling a comprehensive and holistic approach to combat the threats the TCOs pose. As was detailed in President Biden's National Drug Control Strategy, "[s]ubstantial improvement and cooperation between agencies at the federal level and among federal state, local Tribal, and territorial agencies is necessary in order to effectively confront the present domestic illicit drug trafficking landscape."[7]

# Background

The AGO has previously led efforts to effectively utilize information obtained from the MSB industry to address TCO's criminal activities. Starting in 1997, the AGO learned that criminal organizations were using MBS payment systems in connection with the smuggling of illegal immigrants into Arizona. Based upon the analysis of financial information obtained, investigators determined that human smugglers ("coyotes") were receiving hundreds of millions of dollars through MSB each year through a small set of money transmitter agent locations, most of them operated by Western Union (WU). In 2001, the Attorney General brought criminal and civil racketeering charges against the first of a series of Western Union (WU) agents. These undercover operations continued through 2004, charging and seizing the assets of six

---

[7] The White House Executive Office of the President, Office of National Drug Control Policy, *"2022 National Drug Control Strategy,"* p76. https://www.whitehouse.gov/wp-content/uploads/2022/04/National-Drug-Control-2022Strategy.pdf.

STRATEGY TO COMBAT TRANSNATIONAL CRIMINAL ORGANIZATIONS                                                3



WU agents and a MoneyGram agent. Ultimately, the AGO and WU entered into a $94 million Settlement Agreement.[8] WU recognized that "[a]ssisting law enforcement in its efforts to combat illegal activity serves the public interest on both sides of the border and helps protect those who use our services." [9] Thereafter, on February 3, 2014, the AGO and Western Union announced an Amendment to their original Settlement Agreement.[10] Under the Amended Settlement Agreement, WU agreed, among other things, to provide full transaction data relating to all transactions, including WU subsidiaries, sent to or from locations within the Southwest Border Data Area involving transactions in amounts of $500 or more. The Southwest Border Data Area included the States of California, Arizona, New Mexico, and Texas, and the country of Mexico.[11] In its Order, the Maricopa County Superior Court accepted the parties' stipulation that the "[p]ersonal Information Western Union is required to produce is necessary to carry out the legitimate interests of the State in investigating and prosecuting criminal activity, including money laundering and human smuggling, and the State's legitimate interests are not overridden by the fundamental rights and freedoms of the individuals whose Personal Information is disclosed to the State."[12]

# The Transaction Record Analysis Center (TRAC)

To draw WU analysts and LE closer together to achieve their mutual goal of effectively deterring, detecting, and preventing money laundering and to achieve economies of scale and avoid duplication of efforts, the Amendment to the Settlement Agreement also required WU to fund the creation of the Transaction Record Analysis Center (TRAC).[13] TRAC is a non-profit 501(c)(3) corporation employing six analysts and two directors with extensive expertise in detecting, investigating, and prosecuting criminal organizations engaged in money laundering. TRAC manages a secure information-sharing platform that leverages the information obtained

---

8 *Arizona Attorney General's News Release on Multi-State Settlement*, (11 February 2010), Western Union Press Releases https://ir.westernunion.com/news/archived-press-releases/press-release-details/2010/Arizona-Attorney-Generals-News-Release-on-Multi-State-Settlement/default.aspx.
9 Archibold, Randal C., "*Western Union to Pay in Border-Crime Deal*" The New York Times, 11 February 2010, https://www.nytimes.com/2010/02/12/us/12arizona.html.
10 *See* United States Securities and Exchange Commission Form 8-K, 31 January 2014., exh. 99.1, "Agreement Between Arizona and Western Union Is a Major Step in the Fight Against Money Laundering" *Joint Statement Attorney General Tom Horne and Western Union General Counsel John*, 3 February 2014, https://content.edgar-online.com/ExternalLink/EDGAR/0001365135-14-000007.html?hash=078a57a8fcfd5cfbc287229f3d2c09487c5742221d2133e9c4d7772a0448c81c&dest=A101SWBAGREEMENTAMENDMENT_HTM#A101SWBAGREEMENTAMENDMENT_HTM.
11 *See* United States Securities and Exchange Commission Form 8-K, 31 January 2014., exh.10.1, Settlement Agreement Amendment, ¶17.1.6. https://content.edgar-online.com/ExternalLink/EDGAR/0001365135-14-000007.html?hash=078a57a8fcfd5cfbc287229f3d2c-09487c5742221d2133e9c4d7772a0448c81c&dest=A101SWBAGREEMENTAMENDMENT_HTM#A101SWBAGREEMENTAMENDMENT_HTM.
12 See United States Securities and Exchange Commission Form 8-K, 31 January 2014., exh.10.1, Order Accepting Agreement Amendment. https://content.edgar-online.com/ExternalLink/EDGAR/0001365135-14-000007.html?hash=078a57a8fcfd5cfbc287229f3d2c-09487c5742221d2133e9c4d7772a0448c81c&dest=A101SWBAGREEMENTAMENDMENT_HTM#A101SWBAGREEMENTAMENDMENT_HTM.
13 Specifically, the Amended Agreement provided: "To draw Western Union analysts and law enforcement analysts closer together to achieve their mutual goals of effectively deterring, detecting, and preventing money laundering, and to achieve economies of scale and avoid duplication of effort, Western Union's compliance organization and the Financial Crimes Task Force will create a Money Transmitter Transaction Record Analysis Center ("TRAC" or "Center"). *Id.*



by the AGO and other LE agencies by using advanced data analytics and providing actionable insights to LE. TRAC also identifies and provides extensive training to LE about the trends and methodologies employed by TCO to launder their illicit proceeds.

With its engagement with TRAC, the AGO has established strong and successful partnerships with government agencies, corporate MSBs, and other relevant stakeholders to enable a more thorough approach to combat DTO's extensive money laundering activities. With the information collected from WU and other corporate MSBs, and through its partnership with TRAC and other Federal and State agencies, the AGO has assisted in identifying complex money laundering networks, uncovering hidden relationships, and detecting emerging trends. [14] [15] [16] [17] [18] [19]

Continued collaboration with TRAC will facilitate the sharing of information with LE and the MSB industry and provide the needed expertise and resources to enable a more comprehensive approach to combat the laundering of illicit proceeds in Arizona and throughout the United States.

# Data Analysis is Critical to the Success of the AGO Strategic Objective

As was recognized in the 2022 National Drug Control Strategy Report, in addition to confronting TCOs' illicit drug manufacturing and trafficking activities directly, the U.S. must also pursue the financial enablers of this illegal activity to deny TCOs their ill-gotten proceeds and disrupt their ability to transfer working capital to fund their range of illicit activities including procuring precursor ingredients, trafficking, bribery, and corruption.[20] In its 2022 National Money Laundering Risk Assessment, the U.S. Department of Treasury noted that the DEA estimates that criminal organizations continue generating billions of dollars in illicit proceeds

---

14 Vandell, Perry, *"Arizona Attorney General Defends Money Transfer Surveillance Program After Announcing 4.5M fentanyl Pills Seized."* AZCentral. (23 February 2023). https://www.azcentral.com/story/news/politics/arizona/2023/02/23/kris-mayes-applauds-fentanyl-seizure-defends-wire-transfer-surveillance-program/69934056007/.
15 Mandel, Eric, *"Feds Charge 11 for Laundering $40 Million from Metro Atlanta to Mexico."* Atlanta Business Journal. (21 June 2017). https://www.bizjournals.com/atlanta/news/2017/06/21/feds-charge-11-for-laundering-40m-from-metro.html.
16 United States Attorney's office, Southern District of Ohio. *"8 Individuals Sentenced to Prison for Laundering $44 Million in Drug Proceeds to Mexico Through Local Cell Phone Store Fronts."* Press Release. (9 April 2021). https://www.justice.gov/usao-sdoh/pr/8-individuals-sentenced-prison-laundering-44m-drug-proceeds-mexico-through-local-cell.
17 United States Attorney's Office, Northern District of Texas. *"28 Charged in Cartel Money Laundering Scheme."* (27 August 2020). https://www.justice.gov/usao-ndtx/pr/28-charged-cartel-money-laundering-scheme.
18 United States Attorney's Office. *"Three Business Owners Charged with Wiring Drug Trafficking Money to Mexico."* (22 September 2022). https://www.justice.gov/usao-wdmo/pr/three-business-owners-charged-wiring-drug-trafficking-money-mexico#:~:text=In%20addition%20to%20the%20drug,trafficking%20conspiracy%20to%20Michoac%C3%A1n%2C%20Mexico.
19 United States Attorney's Office, Northern District of California. *"Oakland Money Service Business Owner and Employee Charged with Laundering Drug Proceeds."* Press Release. (2 September 2022). https://www.justice.gov/usao-ndca/pr/oakland-money-service-business-owner-and-employees-charged-laundering-drug-proceeds.
20 The White House Executive Office of the President, Office of National Drug Control Policy. *"2022 National Drug Control Strategy."* P. 12. https://www.whitehouse.gov/wp-content/uploads/2022/04/National-Drug-Control-2022Strategy.pdf.



yearly.[21] Further, and consistent with the observations made by TRAC and LE partners, the Treasury Department explained that Financial institutions, including banks and money services businesses (MSBs), remain vulnerable to exploitation by DTOs that use front and shell companies and third parties (including money mules) to wire proceeds from the United States to their base of operations.[22] Analysis of MSB transaction records allows for a comprehensive view of the activities of criminal networks operating within the MSB industry, enabling investigators to identify the exploitation of weaknesses in anti-money laundering protocols, detect irregular patterns commonly present in money laundering instances, and trace the flow of suspicious transactions across several corporate entities simultaneously to identify hidden networks and associations within TCOs.

# The Data Subpoenaed by the AGO is Imperative to the AGO's Strategic Objective

To proactively identify the extensive financial activity of the TCOs operating in Arizona and leverage the advanced analytics available through the AGO's engagement with TRAC, the Arizona Attorney General's Office has issued prospective administrative subpoenas under A.R.S. 13-2315, Racketeering Demand Letters, demanding transactions that fit any one of the following criteria: originate in the Southwest Border (including the states of Arizona, California, New Mexico, and Texas); originate in Mexico; Are paid out in the Southwest Border (including the states of Arizona, California, New Mexico, and Texas); or are paid out in Mexico.

Under A.R.S. § 13–2315(A), a financial institution is obliged to produce records to the Attorney General when the request is accompanied by a sworn statement that the request is made "in order to investigate racketeering as defined by § 13–2301, subsection (D), paragraph 4, or a violation of § 13–2312." To qualify as 'racketeering,' and thereby meet that element of A.R.S. § 13–2315, [which permits investigation of racketeering,] conduct must be 'chargeable or indictable' in Arizona and described in § 13–2301(D)(4)." The TCO's wide variety of criminal activity falls within the definition of Racketeering, namely, drug trafficking, weapons trafficking, fraud, money laundering, human smuggling, and trafficking.

To be entitled to the information sought under A.R.S. § 13–2315(A), the Attorney General must have a reasonable basis for believing that the information sought has a connection with Arizona.[23] However, the AGO's ability to request information is not limited to investigating only

---

21 The Department of the Treasury, 2022 *National Money Laundering Risk Assessment*, (2022 February), pg. 13. https://home.treasury.gov/system/files/136/2022-National-Money-Laundering-Risk-Assessment.pdf.
22 *Id.*
23 *State ex rel. Goddard v. W. Union Fin. Servs., Inc.*, 216 Ariz. 361, 365–66, 166 P.3d 916, 920–21 (Ct. App. 2007); *see also State v. Willoughby*, 181 Ariz. 530, 541, 892 P.2d 1319, 1330 (1995).



specific and identified criminal incidents.[24] Further, AGO's authority is not limited to financial information concerning transactions that occur only in Arizona.[25]

The information sought by the AGO in implementing its strategic objective is no broader than the information the court, accepting the Amended Settlement Agreement between the AGO and WU, found was "necessary to carry out the legitimate interest of the State in investigating and prosecuting criminal activity, including money laundering and human smuggling, and the State's legitimate interests are not overridden by the fundamental rights and freedoms of the individuals whose Personal Information is disclosed to the State. . . ."[26] The AGO and WU also recognized that problems associated with criminal activities are not confined to any single U.S. or Mexico border state. Thus, the parties agreed that expanding the territorial scope of the data production under the Amendment could result in better analysis of potential money laundering transactions associated with organized criminal activity.[27]

While the AGO has had significant successes in identifying, investigating, and prosecuting members of TCOs in Arizona, the recent fentanyl crisis only further strengthens LE's need for the specific transaction records requested in the AGO's recently issued Racketeering Demand Letters.

In its 2020 National Drug Threat Assessment, the DEA described the primary fentanyl threat to the United States as most likely the Sinaloa Cartel due to their demonstrated ability to run clandestine fentanyl synthesis labs in Sinaloa Cartel dominant areas in Mexico. The Sinaloa Cartel exports and distributes wholesale amounts of fentanyl, heroin, methamphetamine, cocaine, and marijuana in the United States by maintaining distribution hubs in various cities. Illicit drugs distributed by the Sinaloa Cartel are primarily smuggled into the United States. [28] Additionally, the concentration of heroin and fentanyl seizures along the Southwest Border and the Mid-Atlantic, Great Lakes, and Northeast areas of the United States demonstrates the ongoing trafficking from the Southwest Border states into the rest of the country.[29]

Mexican TCOs continue to control lucrative smuggling corridors, primarily across the Southwest

---

24 Id. at 367, 166 P.3d at 922 (holding that "in appropriate cases, the Attorney General may use his authority granted by § 13–2315 to investigate not only particular crimes but also classes and types of crime so long as they are crimes that constitute racketeering as defined in the statute.")

25 Id., 216 Ariz. at 368, 166 P.3d at 923.

26 See United States Securities and Exchange Commission Form 8-K, (31 January 2014)., exh.10.1, Order Accepting Agreement Amendment. ¶. 9 https://content.edgar-online.com/ExternalLink/EDGAR/0001365135-14-000007.html?hash=078a57a8fcfd5cfb-c287229f3d2c09487c5742221d2133e9c4d7772a0448c81c&dest=A101SWBAGREEMENTAMENDMENT_HTM#A101SWBAGREEMEN-TAMENDMENT_HTM

27 See United States Securities and Exchange Commission Form 8-K, 31 January 2014., exh.10.1, Settlement Agreement Amendment, ¶17.1.8. https://content.edgar-online.com/ExternalLink/EDGAR/0001365135-14-000007.html?hash=078a57a8fcfd5cfbc287229f3d2c-09487c5742221d2133e9c4d7772a0448c81c&dest=A101SWBAGREEMENTAMENDMENT_HTM#A101SWBAGREEMENTAMENDMENT_HTM.

28 Drug Enforcement Administration, 2020 National Drug Threat Assessment. https://www.dea.gov/sites/default/files/2021-02/DIR-008-21%202020%20National%20Drug%20Threat%20Assessment_WEB.pdf.

29 Id. at pg. 9.



Border, and maintain the greatest drug trafficking influence in the United States.[30] The TCOs expand their criminal influence by engaging in business alliances with other organizations, including independent DTOs, and working with transnational gangs, U.S.-based street gangs, prison gangs, and Asian money laundering organizations (MLOs). See Figure below:[31]



Figure 58. United States: Areas of Influence of Major Mexican Transnational Criminal Organizations by Individual Cartel

The data requested by the AGO is imperative to uncover associates operating in the United States in concert with individuals in Arizona and who are responsible for coordinating the importation and distribution of deadly fentanyl and other illegal substances in Arizona. Without the ability to uncover these complex networks of criminal associations, LE in Arizona is powerless against the relentless exploitation of our financial institutions.

---

30 *Id.* at pg. 65.
31 *Id.*

STRATEGY TO COMBAT TRANSNATIONAL CRIMINAL ORGANIZATIONS                                              8

Case 5:24-cv-00404-SRM-DTB    Document 109    Filed 12/02/24    Page 16 of 20    Page ID #:2231

Case 4:22-cv-07996-HSG    Document 181    Filed 09/26/24    Page 11 of 14



# Cryptocurrency Data is Necessary to Confront the Commission of Fraud Against Arizonans

To further combat criminal activity committed against Arizona residents, including fraudulent scams such as romance and tax scams again, the AGO has also issued subpoenas to Companies managing Bitcoin Automated Teller Machines (ATMs) machines. Because of a certain level of anonymity, lack of expansive oversight, global accessibility, and the challenges associated with reversing transactions, bitcoin ATMs have become a favored environment for DTOs to conduct their illicit fraud activities. In 2022, the IC3 received almost 10,000 complaints from victims of fraud over 60 involving the use of some type of cryptocurrency and losses of these victims totaled over $1 billion. [32] In the Federal Bureau of Investigation's 2022 Internet Crime Report, as detailed in the diagrams below, Arizona is ranked in the top ten states for the number of victims of online fraud, and in losses caused to victims of online fraud.[33]



2022 - TOP 10 STATES BY NUMBER OF VICTIMS[19]

| State | Victims |
|---|---|
| Virginia | 11,882 |
| Arizona | 12,112 |
| Michigan | 13,566 |
| Ohio | 13,659 |
| Pennsylvania | 14,714 |
| Illinois | 14,786 |
| New York | 25,112 |
| Texas | 38,661 |
| Florida | 42,792 |
| California | 80,766 |

---

[32] Federal Bureau of Investigations, *"Elder Fraud Report,"* 2022. https://htv-prod-media.s3.amazonaws.com/files/2022-ic3elder-fraudreport-643e8e89685c2.pdf.
[33] IC3, *2022 Internet Crime Report*, pg.20.  https://www.ic3.gov/Media/PDF/AnnualReport/2022_IC3Report.pdf.

STRATEGY TO COMBAT TRANSNATIONAL CRIMINAL ORGANIZATIONS                                                            9





2022 - TOP 10 STATES BY VICTIM LOSS (IN MILLIONS)[20]

Recognizing the highly exploitative efforts of DTOs to defraud Arizonans through Bitcoin transactions and payments, bitcoin ATM data is critical to identifying, investigating, and prosecuting the individuals responsible for the commission of these horrendous crimes.

# The Need for the Requested Data is Carefully Balanced Against Consumer Privacy Interests

The AGO respects the need to protect consumers' personal information. As a result, the AGO mandates that TRAC and any other LE agencies collaborating with the AGO comply with the strictest of procedures and protocols to protect individuals' personal information. These procedures and protocols involve the most current security systems, practices and architecture, adherence to a stringent data use policy, routine auditing, and premise of use requirements.

# Conclusion

The AGO's strategy recognizes the importance of critical data, the essential role of collaboration with other LE agencies, and the necessity for leveraging the analytical advancement, capabilities, and expertise offered through its engagement with TRAC. Through this comprehensive strategy, coupled with the utilization of specialized resources provided by TRAC, the AGO seeks to curtail the activities of TCOs operating within Arizona and impede the flow of their resulting financial gains.



OFFICE OF THE ARIZONA ATTORNEY GENERAL

AUGUST 2023

Alan Jay Butler	butler@epic.org, 2946855420@filings.docketbird.com
Chen-Chih Ambrosia O'Connor	ambrosia.oconnor@akerman.com
Christopher M. Butler christopher.butler@pillsburylaw.com
Daniel Werner daniel@justfutureslaw.org
Dinesh Keith McCoy dinesh@justfutureslaw.org
Hille von Rosenvinge Sheppard	hsheppard@sidley.com, efilingnotice@sidley.com, hille-sheppard-8094@ecf.pacerpro.com
Jacob Samet Canter jcanter@crowell.com, cromo@crowell.com, jacob-canter-1083@ecf.pacerpro.com
Jennifer Salzman Romano jromano@crowell.com, dwest@crowell.com, jennifer-romano-8395@ecf.pacerpro.com
John Aaron Lawson alawson@edelson.com, 2256072420@filings.docketbird.com, docket@edelson.com
Jordan Rhodes jordan.rhodes@pillsburylaw.com
Julia Alexandra Heiman julia.heiman@usdoj.gov
Julian Zhu  jzhu@edelson.com
Katherine Alphonso  kalphonso@kaufmandolowich.com
Kristin J. Madigan kmadigan@crowell.com, kcastillo@crowell.com, kristin-madigan-6753@ecf.pacerpro.com
Marcus M Dong mdong@kdvlaw.com
Mustafa Filat   ifilat@publiccounsel.org
Natasha J. Fernandez-Silber nfernandezsilber@edelson.com, 9995775420@filings.docketbird.com
Nathan Mark Spatz nathan.spatz@pillsburylaw.com, firmwidecalendardocket@pillsburylaw.com, helen.moreno@pillsburylaw.com
P. Solange Hilfinger-Pardo shilfingerpardo@edelson.com, docket@edelson.com
Parisa Jassim   parisa.jassim@akerman.com, amanda.herrera@akerman.com, ariel.stern@akerman.com, jacqueline.foroutan@akerman.com, masterdocketlit@akerman.com, suzanne.jimenez@akerman.com
Rafey Sarkis Balabanian rbalabanian@edelson.com, 5926930420@filings.docketbird.com, docket@edelson.com
Rebecca M. Suarez rsuarez@crowell.com
Robert Leslie Wallan   robert.wallan@pillsburylaw.com, docket@pillsburylaw.com, inga.delarosa@pillsburylaw.com
Sejal Zota sejal@justfutureslaw.org
Sheila Anil Gogate Armbrust sarmbrust@sidley.com, jhiwa@sidley.com, sfdocket@sidley.com, sfefilingnotice@sidley.com, sheila-armbrust-8144@ecf.pacerpro.com
Stephen Chang	stephen.chang@sidley.com, msam@sidley.com, sfdocket@sidley.com, stephen-chang-1233@ecf.pacerpro.com
Tad A. Devlin tdevlin@kdvlaw.com, gisselle.castillo@kaufmandolowich.com, jbadua@kdvlaw.com
Taylor Haywood taylor.haywood@akerman.com, den-cf@akerman.com, jenny.barker@akerman.com, katie.solem@akerman.com, masterdocketcf@akerman.com
Warrington S. Parker , III wparker@crowell.com, jmorris@crowell.com, warrington-parker-6431@ecf.pacerpro.com
Yaman Salahi ysalahi@edelson.com, 4913733420@filings.docketbird.com, docket@edelson.com

